UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NUMBER: _____

PACIFIC SOLAR ENERGY, S.A. de C.V.,
a Honduran company,

        Plaintiff,

   v.

JACK LEW, Secretary of the Treasury,
UNITED STATES DEPARTMENT OF
THE TREASURY; JOHN E. SMITH,
Acting Director of the Office of Foreign
Assets Control; and OFFICE OF
FOREIGN ASSETS CONTROL,
United States Department of the
Treasury,

        Defendants.

_____/

## COMPLAINT

Plaintiff, PACIFIC SOLAR ENERGY, S.A. de C.V. ("PACIFIC SOLAR" or "Plaintiff"),

hereby brings this action against Defendants, JACK LEW, Secretary of the Treasury, UNITED

STATES DEPARTMENT OF THE TREASURY, JOHN E. SMITH, Acting Director of the

Office of Foreign Assets Control, and the OFFICE OF FOREIGN ASSETS CONTROL

("OFAC"), United States Department of the Treasury (collectively, the "Defendants"), and in

support thereof, PACIFIC SOLAR, states as follows:

## PRELIMINARY STATEMENT

1.     The statute pursuant to which Defendants have acted and are acting in this case is

the Foreign Narcotics Kingpin Designation Act (the "FNKDA"), 21 U.S.C. §§ 1901-1908. The

FNKDA was enacted on December 3, 1999, as Title VIII of the Intelligence Authorization Act for Fiscal Year 2000, Pub. L. No. 106-120, 113 Stat. 1606, 1626-36 (1999). That is the statute that Plaintiff seeks to enforce in this action.

2. This is an action seeking judicial review of administrative action, and for declaratory and mandamus relief, in response to Defendants' refusal to grant Plaintiff administrative relief, including Defendants' failure and refusal to issue Plaintiff a license or provide it with any other administrative relief, and their larger failure and refusal to create and/or administer an administrative process that honors the intent of Congress and the principles of due process in enacting the FNKDA. That intent has been articulated by Congress, has been recognized by this Court and has been recognized by the Eleventh Circuit Court of Appeals. These failures and refusals have led Defendants, on a routine basis, to provide no protection of the rights of innocent people and businesses who are improperly caught in the government drug enforcement activities pursuant to the FNKDA.

3. The intent of Congress, in enacting the FNKDA, was to protect innocents from harm during the government's use of the penetrating, invasive and far reaching drug enforcement tools authorized by the FNKDA. Congress understood the danger posed to innocents by the sweeping powers the FNKDA confers on law enforcement authorities. The statute authorizes the government to fight drug smuggling by blocking the funds and assets of drug smugglers and of those in league with drug smugglers indefinitely without any notice and/or hearing. This provides law enforcement with powerful tools to root out imbedded drug traffickers. However, imbedded drug traffickers, by definition, have embedded themselves in the fabric of society, so at all relevant times many innocent people and businesses are engaged in legitimate commercial

and personal activities with them.  Because Congress recognized this, it made its intention clear that innocents should not be harmed in FKNDA enforcement activities.  Defendants have ignored this Congressional intent.

4.    Congress specifically intends the FNKDA only affect those who are "knowingly and willfully engaged in international narcotics trafficking."  Congress was also clear that the FNKDA is not intended in any way to derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law.  Thus, where an individual or business can demonstrate that they were not knowingly and willfully engaged in international narcotics trafficking, and their funds or assets were blocked under the FNKDA, those funds or assets must be unblocked.  Defendants routinely ignore this Congressional intent and routinely deny applications to unblock funds and assets made by innocents who are not knowingly and willfully engaged in international narcotics trafficking.  This is such a case.

5.    The Conference Committee Report accompanying the FNKDA stated:

> The intention of this legislation [the FNKDA] is to strengthen the ability of United States law enforcement effectively to target international narcotic traffickers attaching to the fabric of our society.  The legislation is based on successful application of the International Emergency Powers Act (IEEPA) against Colombian narcotics traffickers.  **There is no intention that this legislation affect Americans who are not knowingly and willfully engaged in international narcotics trafficking.  Nor is it intended in any way to derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law.**

H.R. CONF. REP. NO. 106-457, at 4243 (1999), reprinted in 1999 U.S.C.C.A.N. 304, 313-14 (emphasis added).

6.    Congress recognized these important safeguards were necessary as part of its efforts to attack smuggling that has attached itself "to the fabric of our society."  It also

recognized that, while its intent was to "bankrupt and disrupt major narcotics trafficking organizations," 1999 U.S.C.C.A.N. at 314, it did not intend to harm "those who are not knowingly and willfully engaged in international narcotics trafficking." *Id.* This expressed Congressional intent required the executive branch and Defendants, who are charged with implementing the FNKDA, to create a <u>fair and effective</u> administrative process to assure that these fundamental and clearly articulated protections were incorporated in rules and decisions made under the FNKDA and that the blocked assets of those "not knowingly and willfully engaged in international narcotics trafficking" are released to them upon application.

7.      On November 14, 2016, OFAC sent a PACIFIC SOLAR a letter re-denying PACIFIC SOLAR's request for a license for the release of its blocked funds.[1] This letter clearly states OFAC's legally incorrect position in connection with the reasons for their refusal to unblock Plaintiff's funds blocked by Defendants pursuant to the FNKDA:

> OFAC licenses the release of blocked funds only under limited and compelling circumstances consistent with the national security and foreign policy interests of the United States. OFAC has reviewed the information you submitted, and has determined once again that licensing the release of blocked funds would be inconsistent with OFAC policy.

8.      The November 14th letter, further demonstrates that Defendants have failed and refused to follow the Congressional mandate detailed above, even after this Court, and the Eleventh Circuit Court of Appeals, have made Defendants aware of the error of their ways in *World Fuel Corp v. Paulson*, 07-CIV-20398-MGC (DE 33), *aff'd World Fuel Corp. v. Geithner*, 568 F.3d 1345 (11th Cir. 2009). That litigation made it clear that foreign policy and national

---

[1] The November 14, 2016 letter to PACIFIC SOLAR from OFAC is attached herein, as Exhibit H.

security concerns do not drive decisionmaking in FNKDA enforcement, the intent of the FNKDA does.

9.      The FNKDA is not an exercise of federal government foreign policy or national security powers, it is a federal criminal statute that Congress intended to be enforced in a manner that protects innocents from harm during its enforcement.  Through blocking actions and through an unwillingness to protect innocents, Defendants have continued to wrongfully enforce the FNKDA, by acting as if the legal protection of innocents intended by Congress was no more than a matter of rarely exercised agency discretion, rather than a matter of clear Congressional intent. In their denial in this case, Defendants continue to hide behind vague, inapplicable concepts of national security and foreign policy rather than enforce the FNKDA, as Congress intended.

10.      This is not the first time that Defendants have been challenged on these points.  In *World Fuel Corp. v. Geithner*, 568 F.3d 1345 (11th Cir. 2009) the Eleventh Circuit explained:

> Specifically, the [district] court found that the OFAC should not have considered "presidential leverage" in evaluating WFC's [World Fuel Corporation] license application.  The OFAC argued that this was a valid consideration, invoking *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981).  In that case the OFAC blocked assets owned by the government of Iran in response to the Iranian hostage crisis, under the authority of the IEEPA. Id.  The Supreme Court stated that blocking orders "permit the President to maintain the foreign assets at his disposal for use in negotiating the resolution of a declared national emergency.   The frozen assets serve as a 'bargaining chip' to be used by the President when dealing with a hostile country."  *Id.* at 673, 101 S.Ct. 2972.
> The district court declined to apply this logic to blocking actions initiated under the Kingpin Act.  The court did not find support in the Kingpin Act, the Regulations, or the Act's legislative history for such a consideration.   Further, the court noted that the blocking action at issue in *Dames & Moore* was initiated under authority of the IEEPA, which was directed at foreign governments. Thus, it was logical for the OFAC to consider the President's leverage when evaluating a license application in that context.   In contrast, the court found that the Kingpin Act was directed at "narco-traffickers and their organizations" and that its goal, as expressed in a House Conference Report, was to "assist U.S.

Government efforts to identify the assets, financial networks, and business associates of major narcotics trafficking groups." H.R.Rep. No. 106-457, at 42 (1999) (Conf.Rep.), as reprinted in 1999 U.S.C.C.A.N. 304, 313.3

      \*\*\*

      Indeed, in our view, the district court here determined that the OFAC did not yet have a legal standard appropriate for the Kingpin Act, because it used a standard derived from the IEEPA-a statute with an entirely distinct target, purpose, and legislative history from the Kingpin Act. **The court held that the OFAC acted arbitrarily and capriciously because in using an inappropriate legal standard, it considered factors totally unrelated to the Kingpin Act. The court rejected the OFAC's approach and explained how the agency must develop one consistent with the Kingpin Act, as opposed to the IEEPA**. To do so, the court had to resort to the Kingpin Act's legislative history. This is because while the Kingpin Act and Regulations spell out a number of things in detail, such as reporting requirements and prohibited transactions, neither the Act nor the Regulations give any specifics as to what criteria the OFAC is to use when evaluating a license application. Thus, in the absence of statutory or regulatory guidance, the court looked to a House Conference Report. 5 We take no issue with this approach-after all, it is well-established that "[i]n the absence of any plain meaning of the statutory language, [a court looks] to the legislative history of the statute to determine whether Congress provided any guidance concerning its intent." *United States v. Fields*, 500 F.3d 1327, 1330 (11th Cir.2007). (Emphasis added).

      More broadly, we agree with the district court that there is nothing about the Kingpin Act, its language, its purpose or its legislative history that would support the reasons given by the OFAC to justify its action. Nowhere do we find any indication that the Kingpin Act is designed to give the President "bargaining chips" with narcotics traffickers. Neither is there any suggestion that the Kingpin Act was intended to somehow supplement our bankruptcy laws.

      In sum, as we read the Remand Order, the district court directed the OFAC to take an entirely fresh look at WFC's license application and to consider that Aero Continente's assets were blocked under the Kingpin Act, not the IEEPA. Thus, rather than mandating a "certain legal standard" to the OFAC, the court directed the agency to develop a new legal standard tailored to the Kingpin Act and its target, purpose, and legislative history.

11.    Defendants have ignored this mandate, and have not followed the direction that they "develop a new legal standard tailored to the Kingpin Act and its target, purpose, and legislative history." Rather, they have, for years now, ignored that direction and have continued to improperly rely on vague, inapplicable national security and foreign policy concerns and have

continued to apply the wrong law and the wrong legal standard to unblocking requests made under the FNKDA. This has led them to again ignore the fact that Plaintiff, an unsuccessful applicant for unblocking, is an "innocent" party not "knowingly and willfully engaged in international narcotics trafficking." Had the intent of Congress been followed here, and the guidance provided by the Eleventh Circuit been followed here, Plaintiff's blocked funds would have promptly been unblocked on these grounds. That was not the result here because Defendants have still not "develop[ed] a new legal standard tailored to the Kingpin Act and its target, purpose, and legislative history" and still fail and refuse to afford protections, including prompt unblocking, for innocents not "knowingly and willfully engaged in international narcotics trafficking." *See Geithner*, 568 F.3d at 1348-49.

12.     Congress structured FNKDA to allow the executive branch to modify some of FNKDA's provisions, by "regulations orders, instructions, licenses, or directives issued pursuant to this chapter," in order to assure that, when smugglers and their allies had insinuated themselves into the fabric of our society, those innocents who unknowingly dealt with them in the ordinary course of commerce would not be collaterally damaged by blocking orders. For example, Section 1904(b), titled "Blocking of assets" provides that "[e]xcept to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this chapter," that blocking would be effective on the stated terms.

13.     Section 1904(c), titled "Prohibited transactions" is similarly written. This drafting allows the executive branch, and specifically the Defendants, to adopt "regulations orders, instructions, licenses, or directives issued pursuant to this chapter" to implement the balance that Congress has specified between punishment of the guilty and protection of the innocent.

14.     Unfortunately, the Defendants have adopted an enforcement scheme under the FNKDA that does not even inquire into guilt or innocence when it blocks access to funds or an application is made to unblock them.  Defendants' treatment of the innocent and the guilty the same, by blocking the assets of both and refusing to unblock either as a matter of right based upon innocence, is contrary to the intent of Congress in enacting FNKDA and is contrary to the concept of due process of law as enshrined in the United States Constitution.

15.     PACIFIC SOLAR, as part of its business operations, develops, installs, maintains and operates solar facilities.  In 2015, PACIFIC SOLAR sought to undertake a project to install approximately 75,000 solar panels in a community near the City of Nacaome in the department of Valle in Honduras.  In connection with the project, PACIFIC SOLAR sought an insurance policy covering PACIFIC SOLAR's property and equipment in connection to the project.

16.     As a result, on or about May 19, 2015, PACIFIC SOLAR applied to obtain an insurance policy (no. 01 09 14 0600016D) (the "Policy") from a Honduran insurance company, Seguros Continental, S.A. (the "Insurer").

17.     The Policy provided U.S. $45.5 million of coverage for damage to solar panels and equipment during the construction of the solar panel project.  The Policy required PACIFIC SOLAR to make a premium payment of **U.S. $105,028.05** to the Insurer.

18.     Thus, on October 7, 2015, PACIFIC SOLAR wired the premium payment of US $105,028.05 from its account at Banco Santander International in Miami, Florida, to the Insurer's account held at Banco Continental, S.A.

19.     Unbeknownst to PACIFIC SOLAR, simultaneously, the Government of Honduras informed OFAC that it had initiated proceedings to liquidate Banco Continental and, on the same

date of its transfer to the Insurer, Banco Continental was included on OFAC's List of Specially

Designated Nationals or Blocked Persons ("SDN List").

20.     Subsequently, PACIFIC SOLAR received notice that the transfer had been

blocked at U.S. Century Bank (an intermediary financial institution).

21.     The effect is that PACIFIC SOLAR's property—$105,028.05—is blocked, and as

of the filing of this Complaint, remains blocked and under OFAC's control.

22.     Since that time, PACIFIC SOLAR has pursued appropriate administrative

channels in an attempt to lift the Defendants' block on the funds.

23.     PACIFIC SOLAR sought licenses from Defendants, pursuant to published

regulations, to secure permission to return the blocked funds to PACIFIC SOLAR.

24.     Along with the requests for a license, PACIFIC SOLAR has written numerous

letters and offered on multiple occasions to meet in Washington, D.C. with representatives of

Defendants to discuss this matter and explain that PACIFIC SOLAR is an innocent party with no

connection whatsoever to drug traffickers and without notice that Banco Continental was one of

OFAC's sanctions targets.

25.     Despite these requests, Defendants have denied PACIFIC SOLAR's requests for a

license and have refused to reconsider their arbitrary and capricious decision.

26.     This action challenges Defendants' actions as a violation of federal law.   The

blocking of PACIFIC SOLAR's funds due to the transfer to Insurer's bank, Banco Continental,

and refusal to grant a license to release the funds is a violation of PACIFIC SOLAR's rights to

due process of law, because at the time that PACIFIC SOLAR initially made the transfer, Banco

Continental was not on OFAC's SDN List and PACIFIC SOLAR had no possible way to understand that Banco Continental was being investigated by OFAC.

27.     PACIFIC SOLAR is an innocent party being significantly affected by OFAC's decision to deny licenses to release the blocked funds.  In fact, while $105,028.05 may not be a large sum of money to OFAC, it is certainly a significant sum to PACIFIC SOLAR and OFAC's actions have jeopardized the company's ability to take on its massive undertaking to provide solar panels pursuant to its Nacaome contract.

28.     The decision to deny PACIFIC SOLAR a license or any other administrative relief to return the blocked funds so that PACIFIC SOLAR can secure insurance to proceed with the City of Nacaome project, was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law.

29.     Had the Defendants adopted proper "regulations, orders, instructions, licenses, or directives issued pursuant to this chapter" to implement the balance that Congress has specified between punishment of the guilty and protection of the innocent, PACIFIC SOLAR would have been allowed to collect its insurance premium and apply for insurance with a separate company, which would have no effect on OFAC's investigation of Banco Continental.

30.     Further, had Defendants fairly and accurately considered PACIFIC SOLAR's application pursuant to the Regulations, 31 C.F.R. Part 598, then it would recognize that PACIFIC SOLAR is a completely innocent third party that has no ties to narcotics trafficking organizations, and the blocked funds should be immediately returned to PACIFIC SOLAR.

31.    This Court should issue whatever relief is necessary to assure that Plaintiff is made whole, and should issue relief that assures that all those who are innocent of drug smuggling receive the protections that Congress and the due process clause intended to provide.

## JURISDICTION AND VENUE

32.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States Defendant); 28 U.S.C. § 1361 (jurisdiction to compel an officer to perform a duty owed to Plaintiff), 5 U.S.C. § 702 (Administrative Procedure Act waiver of sovereign immunity), and 5 U.S.C. § 704 (Administrative Procedure Act final agency action for which there is no other adequate remedy in court).

33.    Declaratory judgment is sought pursuant to 28 U.S.C. § 2201 (creation of remedy) and 28 U.S.C. § 2202 (further relief).

34.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(e)(l) because the United States Defendants' reside in this district and pursuant to 28 U.S.C. § 139l(e)(2) in that the cause of action arose in this District because the blocked funds were sent from PACIFIC SOLAR's bank account with Banco Santander International in Miami, Florida, prior to being blocked by OFAC.

## PARTIES

35.    Plaintiff PACIFIC SOLAR, is a Honduran company with its principal office for the performance of its usual and customary business located in Tegucigalpa, M.D.C., Honduras.

36.    Defendant JACK LEW is the Secretary of the Treasury of the United States.  He has ultimate authority over the decisions made in this case, although much of the day-to-day responsibility for those decisions has been delegated to other defendants.

37.     Defendant UNITED STATES DEPARTMENT OF THE TREASURY is the agency assigned the responsibility by Congress for administration of the FNKDA, 21 U.S.C. 1901-1908, 8 U.S.C. 1183, and is the agency which promulgated the Foreign Narcotics Kingpin Regulations, 31 C.F.R. Part 598.

38.     Defendant JOHN E. SMITH is the Acting Director of the OFFICE OF FOREIGN ASSETS CONTROL, which is the office within the UNITED STATES DEPARTMENT OF THE TREASURY that has direct responsibility for the administration of the above-described statute and regulations, and which makes the day-to-day determinations under those statutes and rules on behalf of the Secretary of the Treasury.

39.     Defendant OFAC, is the office within the UNITED STATES DEPARTMENT OF THE TREASURY that has direct responsibility for the administration of the above described statute and regulations.

40.     The reference to individual Defendants in this Complaint includes predecessors in office, since both individual Defendants are relatively new to their positions, and Defendant Mr. Smith is the acting director for OFAC.

## FACTS COMMON TO ALL COUNTS

41.     PACIFIC SOLAR, as part of its business operations, develops, installs, maintains and operates solar facilities.  In 2015, PACIFIC SOLAR sought to undertake a project to install approximately 75,000 solar panels in a community near the City of Nacaome in the department of Valle in Honduras.

42.     In connection with the project, PACIFIC SOLAR sought an insurance policy covering PACIFIC SOLAR's property and equipment.   The policy would cover building,

installation, and assembly of a photovoltaic power plant including racks, panels, inverters, transformers, and substations, involving excavation works, foundation building, electrical works and perimeter enclosures.

43.     As a result, on or about May 19, 2015, Pacific Solar applied to obtain an the Policy from Insurer, Seguros Continental.   A copy of the Policy (with aa certified English translation) is attached herein as **Exhibit A**.

44.     The Policy provided U.S. $45.5 million of coverage for damage to solar panels and equipment during the construction of the solar panel project.   The Policy required Pacific Solar to make a premium payment of U.S. $105,028.05, including 15% Sales Tax and fees, to the Insurer.  The bank account for the Insurer where PACIFIC SOLAR was instructed to wire the money was Banco Continental.

45.     Thus, on October 7, 2015, PACIFIC SOLAR wired the premium payment of U.S. $105,028.05 from its account at Banco Santander International in Miami, Florida, to Banco Continental, as instructed by the Insurer.

46.     Subsequently, PACIFIC SOLAR received notice that the transfer had been blocked at U.S. Century Bank (an intermediary financial institution).  A copy of U.S. Century's blocking of the bank transfer is attached herein as **Exhibit B**.

47.     Unbeknownst to PACIFIC SOLAR, on the same date as the transfer, Banco Continental was added to the SDN List.  A copy of OFAC's October 11, 2015 announcement of Banco Continental's inclusion in the SDN List is attached herein as **Exhibit C**.

48.     On November 23, 2015, PACIFIC SOLAR timely applied for a license to release the blocked funds.  A copy of the application is attached herein as **Exhibit D**.

49.     The OFAC Licensing Division first replied that it could not locate a record of the funds described, and advised PACIFIC SOLAR to contact U.S. Century Bank, to verify that a blocking had in fact occurred.  A copy of OFAC's initial response is attached herein as **Exhibit E.**

50.     After confirming with U.S. Century Bank that the blocking had occurred, PACIFIC SOLAR re-submitted its application.

51.     On March 28, 2016, in a one-page letter, the Department of Treasury denied PACIFIC SOLAR's request to release the blocked funds.  A copy of OFAC's denial of the license application is attached herein as **Exhibit F.**

52.     In denying the application for a license, OFAC referenced the wrong amount that had been blocked, listing an unknown amount of U.S. $510,601.13—not the U.S. $105,028.05 that was actually blocked.  *See* Exhibit F.

53.     OFAC explained that the blocking was appropriate pursuant to 31 C.F.R. Part 598 because the blocking concerned money sent to a sanctions target.  OFAC further stated that it is "OFAC's policy to license the release of blocked property only in limited circumstances, most of which do not involve commercial activity.  Upon review, OFAC has determined that this blocked funds transfer does not fall within those limited circumstances."  *Id.*

54.     OFAC offered no further explanation for its review process or how it came to the determination to deny PACIFIC SOLAR's request to release the blocked funds, or whether it even considered that PACIFIC SOLAR is a completely innocent party that had no notice that Banco Continental was on the SDN List on October 7, 2015, when the wire transfer was sent to Banco Continental.

55.     On June 2, 2016, PACIFIC SOLAR sent a letter to OFAC requesting that OFAC reconsider its decision to deny PACIFIC SOLAR a license to release the blocked funds. PACIFIC SOLAR also requested a personal interview so that OFAC could explain its decision to deny the license.  A copy of the letter requesting reconsideration is attached herein as **Exhibit G**.

56.     PACIFIC SOLAR followed up repeatedly by phone and correspondence seeking an explanation as to how an innocent party such as PACIFIC SOLAR could be deprived of over one hundred thousand dollars without further explanation or administrative remedy.

57.     It was not until November 14, 2016, more than five months after the request for reconsideration that OFAC responded to PACIFIC SOLAR's request for reconsideration.   A copy of OFAC's denial of the license application is attached herein as **Exhibit H**.

58.     In its November 14th letter, OFAC acknowledges that PACIFIC SOLAR is requesting reconsideration, but plainly concludes that "the blocked funds transfer in question involves an interest of a sanctions target, specifically, Banco Continental S.A. [sic] Therefore, your request is again denied.

59.     In the letter OFAC again, referenced the wrong amount that had been blocked, listing an unidentifiable amount of $510,601.13—not the $105,028.05 that was actually blocked.

60.     As demonstrated above, and by the Exhibits attached herein, PACIFIC SOLAR is no more than an innocent third party in the action taken by Defendants to block funds.  At no time has PACIFIC SOLAR been the intentional target of that action.  And at no time has OFAC even considered that PACIFIC SOLAR is an innocent third party that had no notice that Banco Continental would be on any sanctions list at the time that it transferred money to Banco Continental in order to secure the necessary insurance to go forward with a contract.  But

because of the government's action, PACIFIC SOLAR's funds have been blocked for over one year, and remain blocked, which has jeopardized its ability to complete the solar panel project in Nacaome, Honduras.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

61.    PACIFIC SOLAR has exhausted its administrative remedies in this matter by (i) seeking licensure from Defendants on multiple occasions and requesting reconsideration of the March 28, 2016 denial, as described above, and by (ii) receiving a decision from Defendants on its licensure requests described above and attached as Exhibits to this Complaint.

62.    The agency case numbers in this matter are FNK-2015-324394-1, FNK-2016-326100-1, and FNK-2016-330591-1, per licensure attempts undertaken by PACIFIC SOLAR.

63.    Statute 31 C.F.R. 501.802 provides: "The Office of Foreign Assets Control will advise each applicant of the decision respecting filed applications.  The decision of the Office of Foreign Assets Control, acting on behalf of the Secretary of the Treasury, with respect to an application, shall constitute final agency action."

64.    There has been no prior judicial review of this matter.  All conditions precedent to the bringing of this action have been performed or have been waived.

## COUNT I
## VIOLATION OF THE FNKDA

65.    PACIFIC SOLAR repeats and realleges each of the allegations in paragraphs 1 through 64 as if each were incorporated here in full.

66.    Defendants violated the FNKDA and failed to abide by the intent of Congress when they enforced the FNKDA against Plaintiff.  The refusal to unblock over U.S. $100,000.00 in Plaintiff's funds even though Plaintiff is an innocent, and is not and was not knowingly and

willfully engaged in international narcotics trafficking, is a failure to abide by the intent of Congress.

67.     Defendants also failed to "develop a new legal standard tailored to the Kingpin Act and its target, purpose, and legislative history," as they were told to do in a prior litigation in the Southern District of Florida that was affirmed by of the Eleventh Circuit Court of Appeals. *See* paragraph 10, above.

68.     The regulations, procedures and standards that Defendants have adopted, and currently use in the enforcing the FNKDA against innocents like Plaintiff, violate the FNKDA as Congress intended that statute to be enforced.  In all their actions against Plaintiff, Defendants have failed to respect Congressional intent that the FNKDA not be enforced in a manner that harms those innocent of intentional involvement in drug trafficking and that mandates that innocents not be punished along with the guilty in the enforcement of the FNKDA.  Congress recognized that when drug smugglers insinuate themselves into the very "fabric of our society," there is a danger that innocents can suffer from enforcement efforts that are not guided and informed by a sensitivity to concepts of guilt and innocence, but Defendants have ignored this intent.  That is why they Congress stated, in the Conference Committee Report accompanying the FNKDA:

> There is no intention that this legislation affect Americans who are not knowingly and willfully engaged in international narcotics trafficking.  Nor is it intended in any way to derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law.

H.R. CONF. REP. NO. 106-457, at 4243 (1999), reprinted in 1999 U.S.C.C.A.N. 304, 313-14.

69.     The structure of the FNKDA provided Defendants with the tools to modify the requirements contained in some of FNKDA's provisions, through the administrative process, in

order to assure that when smugglers and their allies had insinuated themselves into the fabric of our society, innocents who dealt with them in the ordinary course of commerce would not be collaterally damaged by blocking orders.

70. For example, Section 1904(b), titled "Blocking of assets" provides that "[e]xcept to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this chapter," that blocking would be effective on the stated terms. Section 1904(c), titled "Prohibited transactions" is similarly written. This drafting allows the executive branch, and specifically these Defendants, to adopt "regulations, orders, instructions, licenses, or directives issued pursuant to this chapter" to implement the balance that Congress has specified between punishment of the guilty and protection of the innocent.

71. Defendants have failed and refused to develop or implement any practices, procedures or standards, as previously instructed by the Southern District of Florida, as affirmed by the Eleventh Circuit Court of Appeals, that will assure that innocent victims, whose only contact is with drug smugglers and their allies is innocent, are protected. The process created and used by the Defendants is a process of blocking by edict, and there is no effective process available to assert or prove innocence because Defendants continue to refuse to acknowledge that innocence is a legally recognized basis for unblocking funds or assets. According to Defendants misunderstanding of the FNKDA, innocence does not matter. It does.

72. For these additional reasons, Defendants are in violation of the Administrative Procedure Act, 5 U.S.C. § 701, et seq., in that they: have unreasonably and arbitrarily interpreted the FNKDA to block transactions against individuals or companies who are not knowingly and willfully engaged in international narcotics trafficking when Defendants' interpretation is clearly

contrary to congressional intent.   In addition, Defendants have unreasonably and arbitrarily applied their authority to injure people and businesses who are not knowingly and willfully engaged in international narcotics trafficking when Defendants' position is clearly contrary to congressional intent:

i) by failing and refusing to create and employ a process that gives legal significance to innocence, and specifically in this case, failing and refusing to provide PACIFIC SOLAR with relief based on its uncontested innocence, in that there is no question that PACIFIC SOLAR is not knowingly and willfully engaged in international narcotics trafficking, it is trying to buy insurance for a large solar project;

ii) by failing and refusing to grant any relief that would release the blocked funds to PACIFIC SOLAR and by failing and refusing to provide a non-boilerplate explanation to Plaintiff as to why its license was denied, even though Defendants are well aware that PACIFIC SOLAR was no more than an innocent victim in the application of the provisions of law that Defendants relied on to block the funds and deny Plaintiff a license to release the funds; and

iii) by otherwise acting to create and implement a process, that they know or should know is inconsistent with both the FNKDA and the due process requirements of the Fifth Amendment to the United States Constitution, that will continue to deprive Plaintiff, who is innocent of all wrongdoing, of its own funds indefinitely by improper blocking.

## COUNT II
## REQUEST FOR DECLARATORY JUDGMENT

73.   PACIFIC SOLAR repeats and realleges each of the allegations in paragraphs 1 through 64 as if each were incorporated here in full.

74.     Plaintiff seeks through this count a declaration pursuant to 28 U.S.C. § 2201 that the Defendants (i) have not followed Congress' intent in the FNKDA that innocent parties who are not knowingly or intentionally involved in international narcotics trafficking be protected, (ii) have not established a set of procedures when evaluating license applications to consider a parties innocence or involvement in narcotics trafficking, or whether the party had notice that an intended recipient of money is on the SDN List, (iii) have not properly considered Plaintiff's license application, and that (iv) the case should be remanded to the Defendant's with instructions to immediately unblock and return Plaintiff's money, which has now been blocked by the Defendants for over one year.

75.     There is a *bona fide*, present, practical need for the declaration.

76.     A declaratory judgment is necessary because the Southern District of Florida has already determined that OFAC's procedure for denying a license under the Kingpin Act was arbitrary and capricious because OFAC used the same procedures and rationale for denying a license under the Kingpin Act as it had been using under the International Emergency Economic Powers Act ("IEEPA").  *See World Fuel Corp v. Paulson*, 07-CIV-20398-MGC (DE 33), *aff'd World Fuel Corp. v. Geithner*, 568 F.3d 1345 (11th Cir. 2009).  The District Court remanded to OFAC the plaintiff's application for a license and specifically instructed that OFAC must consider whether the plaintiff was an innocent party with any knowing connection to drug trafficking.  The Eleventh Circuit Court of Appeals affirmed and announced that the District Court has expressly told the agency that it must develop a new legal standard appropriate for the Kingpin Act.  568 F.3d at 1349.  Despite the Court Order, however, the Defendants have failed to implement procedures, and have failed to consider in this case, the fact that PACIFIC SOLAR

is an innocent party and whether Plaintiff could have even been on notice that Banco Continental was on the SDN List, a fact it did not know, or whether Banco Continental was even on the SDN List, at the time that the transfer initially took place.

77.   The urgency for a declaratory judgment is exemplified because Defendants have continued to block PACIFIC SOLAR's $105,028.05 for over one year, and have shown no indication that Defendants intend to unblock the funds, and the blocking has jeopardized Plaintiff's ability to obtain the necessary insurance to continue with its solar panel contract in Honduras.   To the contrary, Defendants have lost PACIFIC SOLAR's license application, delayed a response for more than 5 months, and repeatedly cited to the wrong amount of blocked funds.

78.   The declaration pertains to a present, ascertainable set of facts and controversy between the parties.

79.   Plaintiff's rights to recover its blocked funds are dependent upon the present, ascertainable facts and law and the Court's application thereof to such facts.

80.   Each of the Defendants have a present and antagonistic interest to Plaintiffs, both in fact and law.

81.   The relief sought is not merely for the purpose of obtaining legal advice from the Court or the answers to questions propounded out of curiosity.

82.   PACIFIC SOLAR respectfully requests that this Court enter a Judgment declaring that the Defendants have ignored the mandates from Congress, the Eleventh Circuit Court of Appeals, and this Court, by failing to implement a set of procedures under the FNKDA that take into consideration whether PACIFIC SOLAR was an innocent party without involvement or

connection to drug traffickers, that Defendants have failed to properly consider Plaintiff's application to grant a license and release the blocked funds, and have otherwise acted arbitrarily and capriciously.  Plaintiff further requests that this Court remand the case to Defendants and instruct Defendants to immediately release the blocked funds back to Plaintiff, and providing all other relief deemed just, proper, and equitable.

## COUNT III
## VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

83.    PACIFIC SOLAR repeats and realleges each of the allegations in paragraphs 1 through 64 as if each were incorporated here in full.

84.    Defendants are in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* in that they: (a) have unlawfully withheld and have unreasonably delayed agency action to which the Plaintiff is entitled, and (b) have taken action that is arbitrary and capricious, an abuse of discretion, and not in accordance with law by:

a.    failing to promptly process PACIFIC SOLAR's application for a license, failing to respond to Plaintiff's request for reconsideration, failing to consider that Plaintiff is an innocent third party that had no knowledge or notice that Banco Continental was a sanctions target, and otherwise acting in an unresponsive manner;

b.    failing to grant a license, or to grant other relief, to release Plaintiff's blocked funds back to Plaintiff, even though it is well aware that Plaintiff was no more than an innocent victim in the application of the provisions of law that Defendants relied on to block the funds in question, and deny a license to release the funds;

c.    otherwise acting to create a process, inconsistent with both the FNKDA and the due process requirements of the Fifth Amendment to the United States Constitution, that

deprives PACIFIC SOLAR, who is innocent of all wrongdoing, of over one hundred thousand

dollars that is necessary for Plaintiff to secure insurance that will permit Plaintiff to move

forward with its solar panel contract in Honduras.

<u>**COUNT IV**</u>
<u>**VIOLATION OF DUE PROCESS OF LAW**</u>

85.     PACIFIC SOLAR repeats and realleges each of the allegations in paragraphs 1

through 64 as if each were incorporated here in full.

86.     Defendants have violated Plaintiff's right to due process of law as guaranteed by

the Fifth Amendment to the United States Constitution by blocking and/or freezing Plaintiff's

funds that were sent to Banco Continental, the *Insurer's* banking institution, in order to secure

the insurance contract.  OFAC's blocking has led to the misappropriation of PACIFIC SOLAR's

funds, which were never intended for Banco Continental, but were intended to the Insurer.

87.     The blocking action was not directed at PACIFIC SOLAR as a participant in any

illegal activity.  Plaintiff was merely an innocent and unintended victim of Defendants' actions,

yet when Defendants were informed of the unintended consequences of their actions, and the

damage those unintended consequences have caused to Plaintiff, Defendants consistently failed

and refused to act to address these unintended consequences or remedy the collateral damage

caused by their actions.  In fact, Defendants' one-page rejection letter lists the incorrect amount

of the blocked funds and fails to offer any reason, beyond standard boiler plate language, as to

why Defendant denied a license to PACIFIC SOLAR under the circumstances of this case.

88.     Defendants violated PACIFIC SOLAR's right to due process of law as guaranteed

by the Fifth Amendment to the United States Constitution and as recognized by Congress when

it enacted the very statute Defendants are enforcing in this case when they blocked Plaintiff's

funds and refused to issue a license to release the blocked funds to Plaintiff upon its application to Defendants for that relief. Congress clearly articulated, when it adopted the FNKDA, that it did not intend to "in any way to derogate from existing constitutional and statutory due process protections for those whose assets are blocked or seized pursuant to law." H.R. CONF. REP. NO. 106-457, at 4243 (1999), reprinted in 1999 U.S.C.C.A.N. 304, 313-14. Nevertheless, Defendants have done so.

89.     There is no bona fide dispute here that PACIFIC SOLAR has, at all times material hereto, been an innocent victim, and has not in any way been guilty of drug smuggling or knowingly aiding such efforts. There is also no bona fide dispute that the blocked funds in question were sent to Banco Continental to secure an insurance contract to permit PACIFIC SOLAR to complete a solar-panel project in Honduras, in the ordinary course of its business.

90.     PACIFIC SOLAR is thus an innocent in this matter, and both the FNKDA and due process require that Plaintiff's innocence count. Plaintiff must be offered a meaningful process at a meaningful time to demonstrate its innocence (if its innocence is even contested, which it should not be here), and to prove that PACIFIC SOLAR was not knowingly and willfully engaged in international narcotics trafficking and did not know that Banco Continental was in the SDN List, and/or that Banco Continental was not yet included in the SDN List at the time of the transfer. If Plaintiff is found innocent of any wrongdoing, as it should be, the blocked funds should be promptly unblocked and returned to Plaintiff.

91.     The process actually adopted by the Defendants unfairly imposes a higher cost on Plaintiff and those like Plaintiff in national efforts to fight drug smuggling than the cost it

imposes on the taxpayers as a whole.  The imposition of the blocked funds and failure to release the funds violates due process.

92.     The Defendants cannot defend their actions based upon the fact that the blocked funds have been earmarked for some other purpose, are subject to some other claim, or are being forfeited.  According to the Defendants' process, the blocked funds simply sit in limbo—which at this point is past one year—in a bank account for an indeterminate amount of time.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff PACIFIC SOLAR ENERGY, S.A. de C.V., requests that this Court:

1.      Take jurisdiction in this action;

2.      Declare Defendants' actions as set forth herein to be unlawful for the reasons alleged;

3.      Declare that Defendants' refusal to release the blocked funds, upon application for that relief by Plaintiff, to be a violation of the FNKDA and of due process of law;

4.      Declare Defendants' action denying PACIFIC SOLAR a license or other administrative relief to be arbitrary and capricious, an abuse of discretion, and not in accordance with law in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*;

5.      Remand the matter to OFAC with instructions that OFAC issue a license authorizing the immediate release the blocked funds if PACIFIC SOLAR's innocence of is not contested, and if it is contested, order Defendants to immediately determine Plaintiff's innocence;

*Pacific Solar Energy v. OFAC, et al.,*
*Complaint*
*Page 26*

6.      Issue a mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling the Defendants to immediately issue Plaintiff a license or other relief that entitles it to collect its $105,028.05 that has been improperly misappropriated for over one year by Defendants;

7.      Issue a mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1) compelling the Defendants to create a process for the processing of applications for unblocking in which innocence is dispositive, as intended by Congress; and

8.      Grant such other further relief as Plaintiff may request and/or as this Court deems just and proper under the circumstances.

DATED this 23rd day of December, 2016.

Respectfully submitted,

**SHUTTS & BOWEN LLP**
Attorneys for Pacific Solar
200 South Biscayne Boulevard
Suite 4100
Miami, Florida 33131
Telephone:      305-379-9161
Facsimile:      305-347-7861
*dperez@shutts.com*

By _____
Dario A. Perez, Esq.
Florida Bar No. 58076
Marcela Lozano
Florida Bar No. 073382

MIADOCS 14100849 4